## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **COCAM INT'L ENTERPRISES, LTD**, (Directly and Derivatively on behalf of Nominal Defendant, ADVANCED OUTDOOR INNOVATIONS, LLC) | * | |
| | * | |
| | * | |
| Plaintiff, | | |
| v. | * | Civil Action No. _____ |
| **CHRISTOPHER SVENSRUD,** | * | |
| **JASON DREW,** and | | |
| **MOGOTANI FAST CORPORATION** | * | |
| Defendants. | * | |
| And | * | |
| **ADVANCED OUTDOOR INNOVATIONS, LLC** | * | |
| | * | |
| Nominal Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Cocam Int'l Enterprises Ltd. ("Cocam"), directly for itself and derivatively on behalf of Nominal Defendant, Advanced Outdoor Innovations, LLC – a limited liability company organized and existing under the laws of Delaware (hereinafter "AOI-DE" or the "Company"), and pursuant to Federal Rule of Civil Procedure 23.1, hereby files this Verified Complaint against Defendants, Christopher Svensrud ("Svensrud"), Jason Drew ("Drew"), and Mogotani Fast Corporation ("Mogotani"), and, in support thereof, states as a follows:

### NATURE OF THE ACTION

1.      Plaintiff Cocam, the exclusive supplier to and majority (51%) member of AOI-DE, files this action to temporarily restrain, preliminarily enjoin and recover damages for the egregious

1

misconduct of two rogue Managers of the Company, Defendants, Svensrud and Drew, and the minority Member entity they own and/or control.

2.      Cocam is the supplier of certain consumer products (*e.g.*, outdoor hammocks and related parts and accessories) to AOI-DE.  AOI-DE, in turn, functions as a United States reseller of Products supplied to it by Cocam.

3.      The minority (49%) membership interest in AOI-DE is held by Mogotani Fast Corporation ("Mogotani"), a corporation owned/or controlled by the Defendants Svensrud and Drew.

4.      In recent weeks, Defendants Svenrsud and Drew, who both serve on the Company's four (4) person Board of Managers ("Board") and also serve as the CEO and Secretary of the Company, respectively, have engaged in a series of unauthorized and improper actions in an effort to usurp control over the Company and its assets by effectively locking Cocam and its designated Board representatives out of the Company.

5.      Toward this improper end, Defendants Svensrud and Drew (individually and with the knowledge and complicity of each other and Mogotani) have engaged in the following misconduct:

- Without the approval of the Board or the Company's President and CFO, diverted in excess of $360,000 in consumer payments for online purchases of AOI-DE products from the Company's authorized bank account to a separate unauthorized bank account and/or to other unknown personal or Company accounts under their exclusive control.

- Without the approval of the Board or the Company's President and CFO, denied the Company's President and CFO administrative access to the Company's own website and other online retail platforms on which consumers place their orders, so as to prohibit the Company's President and CFO from being able to track and verify the online orders and the receipt of payments from consumers purchasing products.

2

- Without the approval of the Board or the Company's President and CFO, liberally spent the Company's limited resources on a litany of unauthorized expenditures in excess of $200,000.

- Without the approval of the Board or the Company's President and CFO, cut off the CFO's access to the Company's internal accounting system, so as to prevent her from ascertaining, among other things, where the money generated by customer purchases of products from the Company is going.

- Purporting to unilaterally "relieve" the Company's CFO of her duties without the approval of the Company's Board or its President.

- Without the approval of the Board or the Company's President and CFO, formed and organized a shadow company of the same name, Advanced Outdoor Innovations LLC (absent the comma) as a "domestic" limited liability company organized and existing under the laws of Minnesota.

- Without the approval of the Board or the Company's President and CFO, retained counsel and filed suit in California in the name of the Minnesota shadow company, in an effort to unilaterally seize possession of an alleged, yet unspecified inventory of Products supposedly housed in a warehouse in Eastvale, California.

- Without calling a meeting of the Members or the Board, attempted to force the dissolution of the Company, while at the same time depriving Cocam (its majority member), its representatives on the Board, and the Company's President and CFO of the necessary accounting and customer information to even consider the proposal.

6.      Each and every one of these unauthorized and improper actions by the Defendants, of course, constitutes a direct and material breach of the Operating Agreement and their fiduciary obligations as Managers and officers of the Company.   As a direct and proximate result of these breaches, as well as Defendants' related tortious conduct, the Company faces the imminent threat of irreparable harm to its business, its assets, its brand and its advantageous business relationships with its customers.

7.      Despite repeated requests, the Defendants have refused to cease-and-desist their misconduct, forcing Cocam to try to remove the Defendants from the Board and to serve a demand on the Board that the Company bring this suit against the Defendants.   Unfortunately, Cocam's

3

efforts to remove the Defendants from the Board failed, as Cocam was unable to secure the requisite approval of 60% of the Members' votes at a recent Member meeting.  Similarly, at a recent Board meeting, Cocam's Member demand was refused due to a failure to obtain the requisite approval of a majority of the Company's four-person Board.

8.      Having thus tried, but failed to convince the Company to sue and enjoin the Defendants from their ongoing misconduct, and to protect the Company's business, assets, brand, and customer goodwill and relationships from the imminent threat of irreparable harm that the Defendants' misconduct presents, Cocam now seeks relief from this Court.

## PARTIES

9.      Plaintiff, Cocam, is a limited liability company organized and existing under the laws of the British Virgin Islands, with its principal place of business located at Vistra Corporate Services Center, Wickham Cay II, Road Town, Tortola, VG1110 British Virgin Islands.   The members of Cocam are:

      a.   Min ("William") Zhang – a citizen of China residing in Nanjing, China; and

      b.   Meidi ("May") Chen - a citizen of China residing in Nanjing, China.

10.     Defendant, Christopher Svensrud is a citizen of Minnesota, who, based on information and belief, resides at 3586 Pleasant Avenue, Minneapolis, MN 55409.

11.     Defendant, Jason Drew, is a citizen of Minnesota, who, based on information and belief, resides at 6080 Riviera Ln., Shorwood, Minnesota 55331.

12.     Defendant, Mogotani is a corporation organized and existing under the laws of Minnesota, with its principal place of business located at 3856 Pleasant Ave., Minneapolis, MN. 55409. The registered agent for Mogotani is Christopher Svensrud at 3586 Pleasant Avenue, Minneapolis, MN 55409.

115495\000001\4832-0782-9954.v6

13.     Nominal Defendant, AOI-DE, is a limited liability company organized and existing in good standing under the laws of Delaware, with its principal place of business located in Minneapolis, Minnesota. The registered agent for AOI-DE is The Corporation Trust Company, at 1209 Orange Street, Wilmington DE 19801. A true and authentic copy of a Certificate of Good Standing for AOI-DE dated July 1, 2020 from the Secretary of State of Delaware is attached hereto as **Exhibit 1.**  AOI-DE has two Members: Plaintiff Cocam and Defendant Mogotani.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §1332(a)(1), because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties.

15.     This Court has personal jurisdiction over the Defendants, Svensrud and Drew, pursuant to the Delaware Long-Arm Statute 10 *Del. C.* § 3104 (as made applicable to these proceedings under Rule 4 of the Federal Rules of Civil Procedure) and the Fourteenth Amendment of United States Constitution because:

a.   Defendant Svensrud serves as a Manager and CEO of AOI-DE, a Delaware limited liability company, and his acts and omissions in material breach of his fiduciary obligations to the Company and its Members specifically give rise to the claims asserted against him in this action.  Based on information and belief, Svensrud also serves as President of Mogotani.

b.   Defendant Drew serves as a Manager and Secretary of AOI-DE, a Delaware limited liability company, and his acts and omissions in material breach of his fiduciary obligations to the Company and its Members specifically give rise to the claims asserted

5

against him in this action.  Based on information and belief, Drew also serves as an officer of Mogotani.

c.   Defendant Mogotani is a minority (49%) member of AOI-DE and, based on information and belief, is owned and/or controlled by Svensrud and/or Drew, and, by and through its membership in AOI-DE, is found, transacts and/or is doing business in Delaware.  Moreover, Mogotani's acts or omissions in material breach of the Operating Agreement and in aiding and abetting the breaches of fiduciary duty and tortious conduct of Svensrud and Drew specifically give rise to the claims asserted against it in this action.

16.     This Court has personal jurisdiction over the Nominal Defendant, AOI-DE, as the Company is organized and existing in good standing in Delaware, is registered to and, in fact, transacts business in Delaware, and has a registered agent for service of process in Delaware.

17.     Venue in this Court is proper under 28 U.S.C. § 1391(b), because all Defendants reside, are found, and/or transact business in this judicial district and a substantial part of the events giving rise to this action occurred in this judicial district.

18.     This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

## FACTS COMMON TO ALL COUNTS

**A.  The Business and Structure of the Company**

19.     Cocam is a supplier of certain hammocks and related accessories to AOI-DE, including the MOCK® One Hammock, Chill Master Hammock, Samsara Hammock, Mock'squito Net, Happiness Tarp, Top Quilt, Bottom Quilt and various repair parts ("Products").

20.     AOI-DE functions as a United States reseller of Products supplied to it by Cocam. AOI-DE resells products supplied to it by Cocam to retailers (*e.g.* Gander), and directly to

6

consumers via its own website www.republicofdurablegoods.com and via a series of other online retail platforms, including, but not limited to, Amazon's third-party marketplace.

21.     AOI-DE trades as REPUBLIC OF DURABLE GOODS®, which is a federally registered trademark owned by AOI-DE.  A true and authentic copy of AOI-DE's trademark registration for the REPUBLIC OF DURABLE GOODS® trademark is attached hereto as **Exhibit 2**.

22.     AOI-DE is also the owner of the MOCK® trademark, under which it markets and sells certain hammocks and related products.  A true and authentic copy of AOI-DE's trademark registration for the MOCK® trademark is attached hereto as **Exhibit 3.**

23.     Cocam is the majority member of AOI-DE.  Pursuant to the Operating Agreement dated July 3, 2018 (the "Operating Agreement" or "OA") (a true and authentic copy of which is attached hereto as **Exhibit 4**), Cocam owns 510 units (of 51%) of AOI-DE.  (*Id.*,, at exh. A thereto). The minority member is Defendant Mogotani, which owns 490 units (or 49%) of AOI-DE. (*Id.*). As reflected by the Operating Agreement, Defendant Svensrud is the President of Mogotani, who signed the Operating Agreement on its behalf. (*Id.*, at p. 7).

24.      Under the Operating Agreement, all managerial authority over AOI-DE's affairs rests with its four-person Board comprised of: Min ("William") Zhuang and Bingbing ("Eva") Zhang from Cocam, and Defendants Svensrud and Drew from Mogotani. (*Id.*, § 3.1).  Although each Manager on the Board also serves as a corporate officer, each officer serves at the pleasure of the Board and can take no action on behalf of AOI-DE that exceeds the authority delegated to him or her by the Board. (*Id.*, § 3.4).

25.     Although Defendant Svensrud serves as Chief Executive Officer ("CEO") of AOI-DE, his "general charge and supervision of the business of the Company" is a shared responsibility with the President of AOI-DE, Mr. Zhuang. (*Id.*, § 3.4(b)).  By deliberately the splitting the office

7

of CEO and President between Svensrud and Mr. Zhuang, the day-to-day operations of AOI-DE require the consent of both men.

## B.  Business Operations of the Company Prior to Recent Events

26.    Upon its formation in July of 2018, the Managers of the Company cooperated in its initial start-up, including certain product development, branding, and marketing initiatives.

27.    Cocam was the primary source of funding for the Company's product development efforts and start-up expenses.

28.    As a result of those initial efforts, in early 2019, the Company launched its own line of self-sustaining, portable hammocks and other products and accessories.  Through online sales on its website and on various other online retail platforms, including, but not limited to, Amazon's third-party marketplace, the Company's Products and brand were well-received by consumers.

29.    To meet the demands of its customers, AOI-DE orders and purchases the Products from its exclusive supplier, Cocam.  Cocam invoices AOI-DE for Products that AOI-DE orders, as well as related import, handling and shipping charges.  In the ordinary course of AOI-DE's business, those invoices are typically approved by and are supposed to be paid by the Company.

30.    Upon AOI-DE's receipt of online orders from consumers, the consumers' payments (until recently) were directed to the following authorized AOI-DE bank account:

> **NAME**: ADVANCED OUTDOOR INNOVATIONS, LLC
> **ACCOUNT NO**: ███9177
> **BENEFICIARY's BANK**: Citibank, N.A.
> **CHECK RECEIVING ADD**: 3900 PARADISE RD,
> STE M 89169 NEVADA LAS VEGAS

(the "Authorized Company Account").  At times, AOI-DE transfers money from its Authorized Company Account to the following authorized AOI-DE subaccount from which the Company's CFO would typically pay authorized Company operating and other expenses:

8

**NAME**: ADVANCED OUTDOOR INNOVATIONS, LLC
**ACCOUNT NO**: ████7759
**BENEFICIARY's BANK**: Citibank, N.A.
**CHECK RECEIVING ADD**: 3900 PARADISE RD,
STE M 89169 NEVADA LAS VEGAS

(the "Authorized Company Subaccount").

31.     Under the banking resolutions unanimously passed by the Board at AOI-DE's formation (a true and authentic copy of which is attached hereto as **Exhibit 5**), Mr. Zhuang, as AOI-DE's President, has the sole authority to open bank accounts in the name of AOI-DE, and to designate those officers who would be given access to those accounts. Consistent with this authority, Mr. Zhuang opened the Authorized Company Account and Authorized Company Subaccount, to which he, Svensrud as CEO and Ms. Zhang as CFO were given access.

32.     Although Svensrud was given access to both accounts, he was not supposed to withdraw any funds from the Authorized Company Account, as that account was supposed to only receive payments from customers. Svensrud was authorized to withdraw funds from the Authorized Company Subaccount, but only for the payment legitimate Company expenses. Any withdrawal from the Subaccount in excess $200 required the consent and approval of both the President and CEO.  As detailed below, Svensrud has violated these agreed-upon rules, thereby contributing to the current crisis.

33.     Consumer and other customer payments into the Authorized Company Account are supposed to serve as the Company's primary source of revenues from which AOI-DE looks to pay its invoices to Cocam, as well as its own operating and other expenses.

34.     Distributions of net profits or loses of the Company, if any, are supposed to be split between its two members – 51% to Cocam and 49% to Mogotani, in accordance with the terms and conditions of the Operating Agreement (Exh. 4, OA, §§ 4.2 & 4.3).

115495\000001\4832-0782-9954.v6

**C.  The Defendants' Misconduct in Breach of their Contractual and Fiduciary Duties**

35.    Despite Cocam's financial support during the Company's development and start-up phases and the growing popularity of the Company's Products among consumers, Cocam has been, and continues to be, deprived of the benefit of its substantial investment in the Company due to the Defendants' unauthorized and improper conduct.

*Svensrud's Diversion of Company Revenues to an Unauthorized Bank Account.*

36.    As reflected in the notification sent to AOI-DE from Amazon.com (a true and correct copy of which is attached hereto as **Exhibit 6**), Cocam recently learned that without the knowledge or consent of the Company's full Board, Defendant Svensrud has been diverting consumer payments for online purchases of AOI-DE products from the Authorized Company Account to an account at U.S. Bank, NA, with an account number ending in "1257," which account is under his exclusive control.

37.    Although the full extent and duration of Svensrud's diversion of AOI-DE funds to this and perhaps other personal or unauthorized accounts remains the subject of ongoing investigation, the Company's CFO calculates that from January 1, 2020 through June 17, 2020, the total amount of misdirected and missing revenue from AOI-DE's online sales to consumers through the Company's own website www.republicofdurablegoods.com (the "Company Website") and Amazon.com is $367.183.29.  A true and authentic copy of a chart accurately summarizing the CFO's findings in this regard is attached hereto as **Exhibit 7**.

*Shielding the Company's Online Sales Activities*

38.    In addition to the diversion of AOI-DE's revenue to unauthorized accounts, and despite repeated demands, Svensrud has unilaterally refused to disclose to the Company's

President or CFO the passwords and other information necessary for full administrative access to the Company's accounts with the following third-party retail payment and marketing platforms utilized by AOI-DE in advertising and selling its products:

| |
|---|
| **Amazon** |
| **Amazon Pay** |
| **Shopify** |
| **Shopify Pay** |
| **PayPal** |
| **Quadpay** |
| **Authorize.net** |
| **Stripe** |
| **bill.com** |
| **Webgility** |
| **Klaviyo** |
| **Gorgias** |
| **FACEBOOK** |
| **GOOGLE** |
| **Indiegogo** |
| **Backetkit** |
| **Kickstarter** |
| **Jellop** |

(hereinafter the "Online Platform Accounts"). In addition, Svensrud has denied the Company's President and CFO full administrative access to the Company Website and its domain name "republicofdurablegoods.com" (the "Company Domain Name").

39.     By e-mail dated June 19, 2020 (a true and authentic copy of which is attached hereto as **Exhibit 8**), the Company's President and CFO demanded immediate access to the Company Website and AOI-DE's online storefront on Amazon's third-party marketplace. Svensrud denied that request.

40.     At or around this time, Svensrud and Drew retained a Minnesota lawyer, James Hanvik, Esquire to represent them.

11

41.     In response to an earlier letter sent by Mr. Hanvik to Mr. Zhuang, counsel for Cocam sent a letter to Mr. Hanvik dated June 28, 2020, a true and authentic copy of which is attached hereto as **Exhibit 9.**  In that letter, and in a later e-mail to Mr. Hanvik dated July 2, 2020 (a true and authentic copy of which is attached hereto as **Exhibit 10**), Cocam's counsel demanded, among other things, that Defendants Svensrud and Drew immediately provide to the Company's President and CFO full administrative access to the Online Platform Accounts and Company Website.  Those repeated demands have been ignored by Defendants Svensrud and Drew. Although not specifically referenced in these letters, the Company's CFO also need access to the Company's Domain Name to fully perform her job.

42.     Without full administrative access to the Online Platform Accounts and Company Website, the Company's President and CFO are unable to track and verify the online orders and receipt of payments from consumers purchasing products from AOI-DE.

43.     By unilaterally usurping administrative control of the Online Platform Accounts and Company Website, the Defendants are preventing the Company's CFO from: (i) verifying online orders and payments from consumers, and (ii) authorizing payment to Cocam for the ordered products, so as to permit their shipment to the consumers.  By unilaterally, usurping and blocking full administrative access the Company Domain Name, the Defendants are further preventing the CFO's ability to fully perform her responsibilities as a Manager and officer of the Company.

### Svensrud's Unauthorized Expenditure of AOI-DE Funds

44.     In addition, Defendants Svensrud and Drew have spent AOI-DE's limited funds liberally.  On numerous occasions, and over the objections of the Company's President and CFO, Defendants Svensrud and Drew have used AOI-DE's funds on unauthorized expenditures.  As

12

reflected in the chart attached hereto as **Exhibit 11,** the Company's CFO has managed to track and account for $206,010.95 in unauthorized expenditures of AOI-DE funds by Defendants Svensrud and/or Drew since April 7, 2020.

45.     In addition to these unauthorized expenditures, AOI-DE has funded monthly payments to Defendants Svensrud and Drew, which serve as advances on expected future profit distributions to Mogotani.  As reflected on the chart attached hereto as **Exhibit 12**, the total amount of advances paid to Defendants Svensrud and Drew through May 7, 2020 is $144,000.

*Svensrud's Unilateral and Unauthorized Seizure of AOI-DE's Accounting System*

46.     When the Company's President and CFO raised concerns regarding the Defendants' unauthorized conduct, Svensrud immediately retaliated by shutting the CFO, Ms. Zhang, out of the Company's QUICKBOOKS® accounting system.

47.     Once she realized this, Ms. Zhang sent an e-mail to Defendants Svensrud and Drew dated June 19, 2020 (a true and authentic copy of which of is attached hereto as **Exhibit 13**) demanding, as CFO of the Company, that they "open it immediately."

48.     Rather than comply with that request, Defendant Svensrud, by e-mail dated June 21, 2020, purported to "relieve" Ms. Zhang of her duties as CFO. (Exh. 13).

49.     Of course, Defendant Svensrud had no authority to remove Ms. Zhang as the Company's CFO, as she was appointed by and can only be removed by the Board. (Exh. 4, OA, § 3.4).  At no time did Defendant Svensrud call a meeting of the Board to consider or vote on Ms. Zhang's proposed removal as CFO of AOI-DE.

50.     As the "principal financial and accounting officer of the Company," (Exh. 4, OA, §3.4(c)), of course, Ms. Zhang must have access to and control over the accounting system and other books and records of AOI-DE.  Without such access, Ms. Zhang has no way of discharging

her duties as CFO of AOI-DE, including, but not limited to, verifying consumer online orders and payments, and further authorizing payment to Cocam for the ordered products, so as to permit their shipment to the consumers.

51.     All of the Defendants' misconduct, as described in paragraphs 35 through 50 above is in violation of the fiduciary and contractual obligations owed by the Defendants to the Company and/or to Plaintiff Cocam.

52.     Based on information and belief, each and every unauthorized act or omission of each Defendant, as set forth in paragraphs 35 through 50 above, has been with the knowledge, consent and complicity of, and/or in concert with, each of the other named Defendants, with the exception of the Nominal Defendant.

### *The Devastating Effect of the Defendants' Misconduct on the Company*

53.     As a result of Defendants' misconduct, AOI-DE has been unable to pay its exclusive supplier, Cocam, for ordered Products and related services, resulting in a substantial unpaid balance owed by AOI-DE to Cocam of at least $1,077,233.34.

54.     Having thus placed AOI-DE in financial peril, the Defendants have added insult to injury by preventing the Company from being able collect additional revenue from its customers.

55.     To the extent that consumers are attempting to purchase Products from AOI-DE online, their online payments are being diverted to unauthorized accounts, thereby precluding the Company from being able to pay Cocam for the necessary Products, so as to prevent the consumers' orders from being fulfilled and delivered.

56.     Furthermore, by locking the Company's CFO out of the Online Platform Accounts, the Company Website and its QUICKBOOKS® accounting system, the Defendants are depriving the

Company's CFO any ability to identify or track pending consumer orders, or to verify that those consumers have actually paid for the ordered Products.

57.     By rendering the Company incapable of properly processing and fulfilling online consumer orders and payments, the Defendants have effectively crippled the Company's ability to satisfy the demands and expectations of its customers.

58.     According to a Declaration dated June 30, 2020 that Svensrud submitted in the context of a recent lawsuit he improperly filed in California (discussed below), Svensrud has recently "received: "a high number of requests for returns;" "multiple fraud complaints through credit cards processing companies;" and notices of "shipping delays that have hurt brand equity, revenue and market share as consumers have posted disparaging remarks on social media."

59.     Having been locked out of the Company's product ordering, payment and accounting systems, neither the Company's President, its CFO, nor Plaintiff Cocam have any way of verifying the truth or extent of Svensrud's assertions regarding customer dissatisfaction and complaints.  For example, according to an e-mail from Svensrud to his attorney dated July 1, 2020, as forwarded to Cocam's attorney, Svensrud claims that he, without the knowledge or consent of the Company's President or CFO, is processing refunds to certain consumers "(over $42K at this point)." (Exh. 10, at p.5).

60.     To the extent (as Svensrud claims) consumers are dissatisfied, complaining and demanding refunds, that situation is the result of the Defendants' own misconduct.  At this point, neither Company's President, nor its CFO, nor its supplier, Plaintiff Cocam, can verify: (i) what, if any, consumer orders have been cancelled and refunded; (ii) what orders, if any, remain pending, and (iii) where Svensrud is supposedly getting the money to refund to consumers.

115495\000001\4832-0782-9954.v6

61.     Regardless of the truth, or lack thereof, of Svensrud's statements in this regard, the Defendants' misconduct is clearly posing an imminent threat of irreparable harm to the Company's ability to properly process, pay for, and fulfill customer orders.  Such inability inherently presents the imminent threat of customer dissatisfaction, complaints and demands for refunds, thereby irreparably harming the Company's goodwill and advantageous business relations with its customers-- most of whom are consumers--and ultimately the integrity of the Company's brand.

62.     Moreover, the Defendants' misconduct also presents an imminent threat of irreparable harm to the underlying rights of internal management that the Company and its majority Member, Cocam, have under the Operating Agreement and applicable Delaware law. Under the Operating Agreement, Cocam's designated Managers on the Board are supposed to have an equal say with the two Managers appointed by Mogotani.  Moreover, the Company's President (Mr. Zhuang) and its CEO (Svensrud) are supposed to handle the day-to-day business operations of the Company by consent.  By unilaterally hijacking control of the Company, the Defendants are stripping Cocam and its representatives of the ability to even know of the Company's ongoing activities, much less perform their appointed roles in the management of the Company.

63.     Thus, Defendants' unauthorized and unlawful misconduct inherently poses an imminent threat of potential liability to consumers and perhaps third-parties, and to the very survival of the Company as a going concern.  In short, the Defendants, who want to coerce Cocam into dissolving Company, are in the process of unilaterally destroying it themselves, thereby posing an imminent threat of irreparable to the Company for which monetary damages would be neither readily ascertainable, nor adequate to remedy.

*Svensrud's Unauthorized California Lawsuit*

64.     Under the pretense of having to remedy an emergency of his own making (*i.e.,* unfulfilled consumer orders for Company Products), Svensrud recently retained counsel and brought suit in California state court in an effort to obtain an *ex parte* order of attachment of Product inventory allegedly sitting in a warehouse located at 6245 Providence Way, Eastvale, California 92880 (the "Eastvale Warehouse"). *See Advanced Outdoor Innovations LLC v. Alpha Mart Holdings, LLC et. al.*, Case No.  RIC2002152 (Super. Ct. for Riverside Cnty. CA) (the "California Suit")

65.     The California Suit does not name Cocam as a Defendant.  Rather, it names as Defendants: (i) Alpha Mart Holdings, LLC ("AHM") – Cocam's supplier and importer of its Products into the United States, (ii) the owner of the Eastvale Warehouse (which is unaffiliated with Cocam), and (iii) another unaffiliated entity whose purported role in the case is unclear from the pleadings and unknown to Cocam.

66.     According to the Complaint in the California Suit, the named plaintiff is Advanced Outdoor Innovations LLC [no comma], "a registered Minnesota Corporation doing business in Riverside County, California."

67.     Plaintiff Cocam, however, has never entered into a business relationship with, is not a member of, and has never authorized the formation of any entity called "Advance Outdoor Innovations LLC" under the laws of Minnesota.  Although AOI-DE's Board was aware of Svensrud's efforts to change the principal place of business of AOI-DE to Minneapolis, Minnesota, the Board never authorized AOI-DE's re-domestication as a Minnesota limited liability company. To the contrary, AOI-DE remains a limited liability company in good standing with the State of Delaware.

115495\000001\4832-0782-9954.v6

68.     In light of the allegations in the California Complaint, Cocam obtained from the Office of the Minnesota Secretary of State a copy of a "Certificate of Organization" for Advanced Outdoor Innovations LLC ("AOI-Minn"), a true and authentic copy of which is attached hereto as **Exhibit 14.**  Based on this certificate, it appears that Svensrud did, in fact, form and register AOI-Minn as a "domestic" limited liability company under the laws of the State of Minnesota, without the consent or authorization Cocam or the Board of AOI-DE.

69.     To the extent that AOI-Minn exists as a Minnesota limited liability company, that entity: (a) is not now and never has been a customer of Cocam; and (b) is not now and never has been licensed to trade as or sell products under the REPUBLIC OF DURABLE GOODS® trademark or the MOCK® trademark.

70.     Thus, without the authorization or consent of Cocam or the Board of AOI-DE, Svensrud has formed and is now suing in the name of a shadow company with virtually the same name (absent a comma) in an effort to seize inventory over which it no rights whatsoever.

71.     When challenged on this point during a hearing in the California Suit on July 6, 2020, Svensrud's California counsel stated on the record that his reference to AOI-Minn in the Complaint was his "mistake," and that he had intended to file suit on behalf of AOI-DE.  To date, however, there has been no amendment to the Complaint in the California Suit to correct this purported error.

72.     Of course, to the extent that Svensrud intended to bring the California Suit in the name of AOI-DE, he would have done so without the knowledge, consent or approval of the AOI-DE Board, its President or CFO, or its majority member, Cocam.  At no time prior to filing the California Suit, did Svensrud inform his fellow officers, or convene a meeting of the Board to consider or authorize the retention of counsel or the filing of California Suit.

73.     Thus, if contrary to his own allegations, Svensrud is attempting to bring the California Suit in the name of AOI-DE, he has no authority to so.  This Court should temporarily restrain and preliminarily enjoin the Defendants from amending the Complaint in the California Suit to substitute AOI-DE as the named plaintiff in that case and from taking any further action in pursuit of the California Suit in the name of AOI-DE.

74.     All of the Defendant Svensrud's misconduct in connection with the unauthorized formation of AOI-Minn and its unauthorized and improper filing and pursuit of the California Lawsuit, as set forth in paragraphs 64 through 73 above is in violation of his fiduciary duties to the Company and its Member, Cocam.

75.     Based on information and belief, each and every unauthorized act or omission of Defendant Svensrud in connection with the unauthorized formation of AOI-Minn and its unauthorized and improper filing and pursuit of the California Lawsuit, as set forth in paragraphs 64 through 73 above, has been with the knowledge, consent and complicity of, and/or in concert with, each of the other named Defendants, with the exception of the Nominal Defendant.

### Cocam's Efforts to Stop the Defendants Misconduct

76.     Upon learning of the Defendants' egregious misconduct, the Company's President and CFO, and also counsel for Cocam, made repeated demands that Defendants Svensrud and Drew cease-and-desist and take the following immediate actions:

- Provide to the Board and the Company's President and CFO a full and complete disclosure of all bank accounts (whether held by Svensrud or Drew personally, or held in the name of Mogotani or the Company), into which Company revenue has been diverted by them.

- Transfer all Company funds held by Svensrud or Drew into the Company's Authorized Company Account.

19

- Provide a full and complete disclosure of the passwords and any other information necessary for the Company's President and CFO to gain full administrative access to each of the Company's Online Platform Accounts and the Company Website.

- Fully cooperate in issuing the necessary directives to the operators of certain Online Platform Accounts to ensure that all online payments intended for AOI-DE made by consumers via those platforms are sent to the Company's Authorized Company Account.

- Fully cooperate in changing the payment directives on the Company Website to ensure that all online payments by consumers via that website are sent to the Company's Authorized Company Account.

- Immediately restore to the Company's CFO full and unfettered access to the Company's books and records, including, but not limited to, the Company's QUICKBOOKS® accounting system.

- Immediately produce to the Company's CFO all information necessary to ascertain any and all currently pending, but not yet delivered, orders for products placed by consumers, the payments made by those consumers and the accounts into which those payments have been deposited.

- Provide written assurances that they have not negotiated with or engaged any other person or entity to manufacture or supply products to AOI-DE in violation of Cocam exclusive supply rights.

- Immediately cease the Company's acceptance of any more online orders for Products from consumers, unless and until the Defendants fully comply with the items listed above.

- Immediately dismiss the baseless and unauthorized California lawsuit.

(Exhibits 8, 9 & 10) ("Cocam's Emergency Requests"). Again, although not specifically mentioned in this earlier correspondence, the Company's CFO must also be given full administrative access to the Company's domain name to fully perform her job – access that is now part of the injunctive relief sought from this Court below.

77.     As of the date of this letter, Defendants Svensrud and Drew have refused to comply with Cocam's Emergency Requests.

20

78.     To the contrary, without calling a meeting of the Members or the Board, and through their counsel, Mr. Hanvik, the Defendants persist in efforts to coerce the dissolution and winding up of the Company, while at the same time depriving Cocam, its representatives on the Board, and the Company's President and CFO with the necessary accounting and customer information to even consider such proposal.

79.     Moreover, based on information and belief, and without the approval of the Board, the Company's President or its CFO, the Defendants: (i) have begun to negotiate and/or contract with one or more alternative suppliers for the Products in contravention of Cocam's exclusive right to supply AOI-DE; and (ii) nowsell goods other than the Products, including, but not limited to Cannabidiol (CBD) products on the Company's website under the Company's REPUBLIC OF DURABLE GOODS®.

### Cocam's Member Demand and The Board's Refusal of the Same

80.     In light of the Defendants' steadfast refusal comply with Cocam's Emergency Requests, Cocam, by letter from its counsel dated July 8, 2020, served a Member Demand (the "Demand") (a true and authentic copy of which is attached hereto as **Exhibit 15**)[1] on the Company's Board and on Mogotani demanding that the Board immediately:

- With the advice of counsel in Delaware, file suit on behalf of the Company against Messrs. Svensrud and Drew in a court of competent jurisdiction for their direct and material breaches of the Company's Operating Agreement and their fiduciary duties to the Company and its Members.

- With the advice of counsel in Delaware, seek immediate injunctive relief and/or any and all such other remedies appropriate and necessary to prevent any further irreparable harm to the Company as a result of the misconduct of Messrs. Svensrud

---

[1] The attached copy of Exhibit 15 does not include the extensive exhibit packet to which the demand letter refers, as the most of them overlap with exhibits attached hereto. The Defendants are already in possession of the exhibits attached to the Demand letter, but if this Court needs them, they can be provided.

115495\000001\4832-0782-9954.v6

and Drew, and any and all rights and remedies afforded to the Company under the Operating Agreement, the Delaware Limited Liability Act, at law or in equity.

(*Id.*, at 4).

81.     In connection with service of the Demand, Cocam also requested that the President of the Company call a special, emergency meeting of the Members to consider three (3) resolutions proposed by Cocam:

- That the size of the Company's Managing Board be reduced from four (4) to two (2) Managers.

- That Chris Svensrud be immediately removed as a Manager of the Company.

- That Jason Drew be immediately removed as a Manager of the Company.

(collectively, the "Cocam Member Resolutions").

82.     By letter dated July 8, 2020, Manager and Company President, Mr. Zhuang, sent to both Members a Notice of Emergency Meeting of the Members of the Company ("Member Meeting Notice") scheduled for the following day, July 9, 2020 @ 8:30 p.m. (EDT).  A true and authentic copy of the Member Meeting Notice, as transmitted via e-mail and subsequently served on both Members is attached hereto as **Exhibit 16**.  Counsel for Defendants Svensrud and Drew, Mr. Hanvik, as well as counsel for Cocam, were copied on and sent this letter and the attached Notice via e-mail.

83.     Moments later, by letter dated July 8, 2020, Mr. Zhuang sent to each Manager on the Board a Notice of Emergency Meeting of the Board of Managers of the Company (the "Board Notice") scheduled for the following day, July 9, 2020 @ 8:45 p.m. (EDT).  A true and authentic copy of the Board Meeting Notice as transmitted via e-mail and subsequently served on all four (4) Managers is attached hereto as **Exhibit 17**.  Counsel for Defendants Svensrud and Drew, Mr.

Hanvik, as well as counsel for Cocam, were copied on and sent this letter and attached Notice via e-mail.

84.     As set forth in the Board Meeting Notice, the purpose of the Board Meeting was to consider the following four (4) proposals sponsored by Cocam's two representatives on the Board, Mr. Zhuang and Ms. Zhang:

- Authorize the President of the Company to retain counsel and file suit on behalf of the Company against Messrs. Svensrud and Drew in a court of competent jurisdiction for their direct and material breaches of the Company' Operating Agreement and fiduciary duties to the Company and its Members.

- Authorize said retained counsel to seek immediate injunctive relief and/or any and all such other remedies appropriate and necessary to prevent any further irreparable harm to the Company as a result of the misconduct of Messrs. Svensrud and Drew and any and all rights and remedies afforded to the Company under the Operating Agreement, the Delaware Limited Liability Act, at law, or in equity.

- Remove Mr. Svensrud as CEO of the Company and name Min ("William") Zhuang as his replacement to serve as the Company's CEO for remainder of Mr. Svensrud's current term;

- Remove Mr. Drew as Secretary of the Company and name Bingbing ("Eva") Zhang as his replacement to serve as the Company's Secretary for remainder of Mr. Drew's current term.

(collectively, the "Board Resolutions").

85.     Several hours before the noticed meetings were scheduled to begin, Mr. Hanvik, on behalf of his client, by e-mail dated July 9, 2020 @ 4:39 p.m. to Cocam's counsel (a true and authentic copy of which is attached hereto as **Exhibit 18)** raised objections regarding the amount of time between his clients' receipt of the meeting notices and the scheduled start times of the Member Meeting and Board Meeting.  Similar concerns regarding their availability for the meetings were raised separately by Defendants Svensrud and Drew in separate e-mails sent to Mr. Zhuang.

86.     Notwithstanding the emergency nature of the meetings, and as reflected in the e-mail from Cocam's counsel to Mr. Hanvik dated July 9, 2020 @ 7:14 p.m. (a true and authentic copy of which is attached hereto as **Exhibit 19),** Mr. Zhuang offered to adjourn both the Member Meeting and the Board Meeting for twenty-four (24) hours provided that the Defendants confirm their availability and attendance the following evening.

87.     Neither the Defendants, nor Mr. Hanvik responded to the offer to adjourn the meetings.

88.     In the absence of such a response, the President of the Company called the Member Meeting to Order at the scheduled time.  As reflected in the minutes of the Member Meeting (a true and authentic copy of which is attached hereto as **Exhibit 20),** no representative of Mogotani appeared at the Member Meeting.  (*Id.*, at 4:18-22).  During the Member Meeting, each of the Cocam Member Resolutions was put up for a vote by the Members.  Although Cocam voted all 510 (or 51%) of its votes in favor of its Resolutions, each Resolution did not pass for failure to obtain the requisite approval of 60% of the Members, as required by Section 3.2 of the Operating Agreement. (*Id.*, at 5:17-7:12).

89.     Thus, Cocam's efforts to remove the Defendants Svensrud and Drew from the Board failed.

90.     Shortly after the conclusion of the Member Meeting, the President called the Board Meeting to order, as reflected by the minutes of the Board Meeting attached hereto as **Exhibit 21.** Defendants Svensrud and Drew appeared for the Board Meeting, but after stating certain objections to it, refused to participate further and exited the Board Meeting before consideration of the four (4) Board Resolutions. (*Id.*, at 4:13-5:23).

24

91.     The Company's President then continued with the Board Meeting calling for a vote on each of the four (4) Board Resolutions.  Although both of the remaining Managers of the Board, Mr. Zhuang and Ms. Zhang, voted in favor of each of the Board Resolutions, all of the Board Resolutions failed for failure to obtain the approval of a majority of the Board. (*Id.*, at 7:5-10:17).

92.     Thus, despite Cocam's efforts, its Member Demand was refused by the Board.

93.     Having thus exhausted all available internal company avenues to stop the Defendants' ongoing misconduct and having requested that the Company sue Defendants directly for such misconduct, Cocam is left with no other choice, but to file this suit directly on its own behalf as a Member of the Company and derivatively on behalf of the Company.

94.     Absent immediate injunctive relief from this Court, as requested below, the Defendants' ongoing breaches of their contractual and fiduciary duties to the Company and to Cocam will cause the Company to suffer imminent and irreparable harm to its business, its assets, it brand and its advantageous relationship with customers.

**(COUNT I)**
**Breach of Fiduciary Duty**
**(Derivative Claim against Defendants Svensrud and Drew)**

95.     Plaintiff Cocam re-alleges, and incorporates herein by reference, the allegations set forth in paragraphs 1 through 94 above.

96.     As Managers and officers of the Company, the Defendants, Svensrud and Drew, owe the Company the duty to act (a) in good faith; (b) in a manner that each of them reasonably believes to be in the best interest of the Company and (c) with the care that an ordinarily prudent person in a like position would use under similar circumstances.

97.    As Managers and officers of the Company, the Defendants, Svensrud and Drew, owe fiduciary duties of loyalty to the Company, and to carry out their managerial and official duties in compliance with the terms of the Company's Operating Agreement.

98.    By engaging in the egregious course of misconduct detailed in this Complaint, all of which falls outside of the bounds of reasonable business judgment, Defendants Svensrud and Drew have breached, and continue to breach, their fiduciary duties to the Company, including but not limited to, their duties of loyalty to the Company and their responsibilities under the Company's Operating Agreement.

99.    Each of the acts and omissions of Defendants Svensrud and Drew complained of in this Complaint were: (i) willful (ii) designed to deceive their fellow Managers and the Company's majority Member, Cocam, and (iii) for the purpose of enriching themselves at the expense of the Company.

100.    As the direct and proximate result of the ongoing breaches of fiduciary duty by Defendants Svensrud and Drew, the Company has suffered and, absent temporary and/or preliminary injunctive relief by this Court, will continue to suffer imminent and irreparable harm to its business, assets, brand, and goodwill and advantageous business relationships with its customers.

101.    There are no adequate remedies at law for the irreparable harm that Company has suffered and continues to suffer as result of the Defendants' breach of their fiduciary duties.

102.    In sharp contrast to the irreparable harm that the Company will suffer if Defendants' misconduct is not temporarily restrained and/or preliminarily enjoined by this Court, that same injunctive relief will not harm the Defendants Svensrud and Drew in any way.   Instead, the

Defendants Svensrud and Drew would merely be required to comport with the fiduciary duties that they have voluntarily undertaken by agreeing to serve as Managers and officers of the Company.

103.     There is a high likelihood that Cocam will succeed on the merits of claims set forth in this Count I, and the injunctive relief requested herein would serve the public interest by requiring Company Managers and officers to respect and abide by their fiduciary duties, and deterring them and potentially others from engaging in such misconduct in the future.

104.     In addition to the aforementioned irreparable harm, for which there are no adequate remedies at law, the Company has suffered, and continues to suffer severe economic harm and monetary damages in excess of $75,000 as a direct and proximate result of the breaches of fiduciary duty by Defendants Svensrud and Drew, including, but not limited to: (i) the revenues wrongfully diverted from the Authorized Company Account, (ii) the Company funds squandered by the Defendants in the form of unauthorized expenditures and (iii) lost profits and business opportunities.

**Count II**
**Breach of Fiduciary Duty**
**(<u>Direct Claim against Defendants Svensrud and Drew</u>)**

105.     Plaintiff Cocam re-alleges, and incorporates herein by reference, the allegations set forth in paragraphs 1 through 104 above.

106.     As Managers and officers of the Company, the Defendants, Svensrud and Drew, owe Cocam, as a Member of the Company, the duty to act (a) in good faith; (b) in a manner that each of them reasonably believe to be in the best interest of the Company and (c) with the care that an ordinarily prudent person in a like position would use under similar circumstances.

107.     As Managers and officers of the Company, the Defendants, Svensrud and Drew, owe Cocam, as a Member of the Company, fiduciary duties of candor and to carry out their

115495\000001\4832-0782-9954.v6

managerial and official duties in compliance with the terms of the Company's Operating Agreement.

108.    By engaging in the egregious course of misconduct detailed in this Complaint, all of which falls outside of the bounds of reasonable business judgment, Defendants Svensrud and Drew have breached, and continue to breach, their fiduciary duties to Cocam, including but not limited to, their duties of candor to Cocam and their responsibilities under the Company's Operating Agreement.

109.    Each of the acts and omissions of Defendants Svensrud and Drew complained of in this Complaint were: (i) willful (ii) intended to deceive their fellow Managers and Company's majority Member, Cocam, and (iii) for the purpose of enriching themselves at the expense of the Company.

110.    As the direct and proximate result of the ongoing breaches of fiduciary duty by Defendants Svensrud and Drew, Plaintiff Cocam has suffered and, absent temporary and/or preliminary injunctive relief by this Court, will continue to suffer imminent and irreparable harm to its rights as a Member of the Company and its substantial investment in the Company.

111.    There are no adequate remedies at law for the irreparable harm that Plaintiff Cocam has suffered and continues to suffer as a result of the Defendants' breach of their fiduciary duties.

112.    In sharp contrast to the irreparable harm that Plaintiff Cocam will suffer if Defendants' misconduct is not temporarily restrained and/or preliminarily enjoined by this Court, that same injunctive relief will not harm the Defendants Svensrud and Drew in any way.  Instead, Defendants Svensrud and Drew would merely be required to comport with the fiduciary duties that they have voluntarily undertaken by agreeing to serve as Managers and officers of the Company.

115495\000001\4832-0782-9954.v6

113.    There is a high likelihood that Cocam will succeed on the merits of its claims set forth in this Count II.

114.    The injunctive relief requested herein would serve the public interest by requiring Company Managers and officers to respect and abide by their fiduciary duties, and deterring them and potentially others from engaging in such misconduct in the future.

115.    In addition to the aforementioned irreparable harm, for which there are no adequate remedies at law, Plaintiff Cocam has suffered, and continues to suffer, severe economic harm and monetary damages in excess of $75,000, as a direct and proximate result of the breaches of fiduciary duty by Defendants Svensrud and Drew, including, but not limited to, lost investment in a Company that is now in financial peril and lost business opportunities.

**Count III**
**Direct Claim for Breach of Contract**
**(against Mogotani)**

116.    Plaintiff Cocam realleges, and incorporates herein by reference, the allegations set forth in paragraphs 1 through 115 above.

117.    The Operating Agreement is a valid and enforceable contract between Cocam and Mogotani under governing Delaware law.

118.    Defendant Mogotani (by and through the egregious misconduct of its appointed representatives on the Company's Board as described in this Complaint) has breached and continues to breach its contractual obligations to Cocam under the Operating Agreement.

119.    At all relevant times, and based upon information and belief, Mogotani knew of, was complicit and/or actively participated in the planning, commission and attempts to conceal the Defendants' misconduct as described in this Complaint.

115495\000001\4832-0782-9954.v6

120.    As the direct and proximate result of Defendant Mogotani's ongoing breach of contract, Plaintiff Cocam has suffered and, absent temporary and/or preliminary injunctive relief by this Court, will continue to suffer imminent and irreparable harm to its contractual rights under the Operating Agreement and its substantial investment in the Company.

121.    There are no adequate remedies at law for the irreparable harm that Plaintiff Cocam has suffered and continues to suffer as result of the Defendant Mogotani's breach of contract.

122.    In sharp contrast to the irreparable harm that the Plaintiff Cocam will suffer if Defendants' misconduct is not temporarily restrained and/or preliminarily enjoined by this Court, that same injunctive relief will not harm the Defendant Mogotani in any way.  Instead, Defendant Mogotani would merely be required to honor the contract that it voluntarily entered into with Cocam.

123.    There is a high likelihood that Cocam will succeed on the merits of its claims set forth in this Count III.

124.     The injunctive relief requested herein would serve the public interest by requiring Company Managers and officers to respect and abide by their fiduciary duties, and deterring them and potentially others from engaging in such misconduct in the future.

125.    In addition to the aforementioned irreparable harm, for which there are no adequate remedies at law, Plaintiff Cocam has suffered, and continues to suffer, severe economic harm and monetary damages in excess of $75,000, as a direct and proximate result of Mogotani's breach of the Operating Agreement, including, but not limited to, lost investment in a Company that is now in financial peril and lost business opportunities.

115495\000001\4832-0782-9954.v6

## COUNT IV
## Tortious Interference with Contract
## (<u>Derivative Claim against All Defendants</u>)

126.   Plaintiff Cocam realleges, and incorporates herein by reference, the allegations set forth in paragraphs 1 through 125 above.

127.   In the ordinary course of its business, the Company enters into contracts for the sale of Products to its customers, including consumers, who purchase the Products online in accordance with the terms and conditions set forth on the Company Website or other online platform on which the Company sells its Products.

128.   The contracts of sale into which the Company enters with its customers are valid and enforceable contracts.

129.   As Managers and officers of the Company, Defendants Svensrud and Drew know of the existence and terms of the Company's contracts of sale with its customers, including consumers.

130.   By and through their misconduct as described in this Complaint (including, but not limited to, secretly diverting online payments made by consumers from the Company's Authorized Account to certain unauthorized accounts belonging to and/or controlled by the Defendants), the Defendants (acting outside of the scope of their authority) are tortiously interfering Company's contracts of sale with its own customers.

131.   The Defendants have undertaken these acts of tortious interference with contract willfully, maliciously, deceitfully and for the deliberate purpose of injuring the Company.

132.   As the direct and proximate result of the Defendants' tortious interference with contract, the Company has suffered and, absent temporary and/or preliminary injunctive relief by

115495\000001\4832-0782-9954.v6

this Court, will continue to suffer imminent and irreparable harm to its contractual relationships and goodwill with its customers.

133.    There are no adequate remedies at law for the irreparable harm that the Company has suffered and continues to suffer as result of the Defendants' tortious interference with contract.

134.    In sharp contrast to the irreparable harm that the Company will suffer if Defendants' misconduct is not temporarily restrained and/or preliminarily enjoined by this Court, that same injunctive relief will not harm the Defendants in any way.  Instead, Defendants would merely be required to comport to cease their improper and tortious misconduct.

135.    There is a high likelihood that Cocam will succeed on the merits of its claims set forth in this Count IV, and the injunctive relief requested herein would serve the public interest by deterring the Defendants and perhaps others from engaging in similar malicious conduct in the future.

136.    In addition to the aforementioned irreparable harm, for which there are no adequate remedies at law, the Company has suffered, and continues to suffer severe economic harm and monetary damages in excess of $75,000 as a direct and proximate result of Defendants' tortious interference with contract, including, but not limited to: (i) the revenues paid by customers, but wrongfully diverted from the Company's Authorized Company Account, and (ii) the profits on those sales that the Company has never realized.

**COUNT V**
**Tortious Interference with Business Relationships**
**(Derivative Claim against All Defendants)**

137.    Cocam realleges, and incorporates herein by reference, the allegations set forth in paragraphs 1 through 136 above.

138.    By and through its marketing, advertising and customer service operations, the Company develops and nurtures advantageous business relationships with its actual and prospective customers, including consumers who search for, review and sometimes purchase the Company's Products online.

139.    As Managers and officers of the Company, Defendants Svensrud and Drew know of the Company's advantageous business relationships with its actual and prospective customers, including consumers.

140.    By and through their misconduct as described in this Complaint (including, but not limited to, wrongfully preventing the Company, by and through its CFO, to properly process and verify consumer orders and payments), the Defendants(acting outside of their authority) are tortiously interfering with the Company's advantageous business relationships with actual and prospective customers.

141.    Based on information and belief, the Defendants have caused and continue to cause delays in the fulfillment and shipping of consumer orders. Such delays inherently and adversely impact the Company's goodwill and advantageous business relationships with actual and potential customers, including consumers, and further impair the Company's brand and its reputation in the competitive marketplace.

142.    The Defendants have undertaken these acts of tortious interference with business relationships willfully, maliciously, deceitfully and for the deliberate purpose of injuring the Company.

143.    As the direct and proximate result of the Defendants' tortious interference with business relationships, the Company has suffered and, absent temporary restraint and/or

preliminary injunctive relief by this Court, will continue to suffer imminent and irreparable harm to its business relationships and goodwill with actual and potential customers.

144.    There are no adequate remedies at law for the irreparable harm that the Company has suffered and continues to suffer as result of the Defendants' tortious interference with business relationships.

145.    In sharp contrast to the irreparable harm that the Company will suffer if Defendants' misconduct is not temporarily restrained and/or preliminarily enjoined by this Court, that same injunctive relief will not harm the Defendants in any way.  Instead, Defendants would merely be required to cease their improper and tortious misconduct.

146.    There is a high likelihood that Cocam will succeed on the merits of its claim set forth in this Count V, and the injunctive relief requested herein would serve the public interest by deterring the Defendants and perhaps others from engaging in similar malicious conduct in the future.

147.    In addition to the aforementioned irreparable harm, for which there are no adequate remedies at law, the Company has suffered, and continues to suffer severe economic harm and monetary damages in excess of $75,000 as a direct and proximate result of Defendants' tortious interference with business relationships, including, but not limited to: (i) lost sales and reasonably anticipated profits on those sales and (ii) other lost business opportunities.

**COUNT VI**
**Aiding and Abetting**
**(Derivative Claim against Mogotani)**

148.    Plaintiff Cocam re-alleges, and incorporates herein by reference, the allegations set forth in paragraphs 1 through 147 above.

34

149.    As a Member of the Company, Defendant Mogotani was aware of the fiduciary duties owed by Defendants Svensrud and Drew to the Company.

150.    Furthermore, Mogotani, by and through its officers Svenrud and Drew, knew all of their own breaches of fiduciary duty to the Company and their tortious interference with the Company's contracts and business relationships.

151.    Armed with the knowledge, Mogotani assisted, aided, encouraged and active participated in Defendants' breaches of fiduciary duty and other tortious misconduct.

152.    Having aided and abetted Defendants Svensrud and Drew, Mogotani is jointly and severally liability for any and all economic harm and damages sustained by the Company as set forth in Counts I, V and VI above.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, directly for itself and derivatively on behalf of the Company, prays for judgment in its favor and against the Defendants, and as relief therefor, respectfully requests the following:

A.  A temporary restraining order and/or preliminary injunction as necessary and appropriate to prevent the imminent threat of irreparable harm to the Company and Plaintiff Cocam, which orders the Defendants to immediately:

- Provide to the Board and the Company's President and CFO a full and complete disclosure of all bank accounts (whether held by Svensrud or Drew personally, or held in the name of Mogotani or the Company), into which Company revenue has been diverted by them.

- Transfer all Company funds held by Svensrud or Drew into the Company's Authorized Company Account.

- Provide a full and complete disclosure of the passwords and any other information necessary for the Company's President and CFO to gain full administrative access to each of the Company's Online Platform Accounts, the Company Website and the Company Domain Name.

- Fully cooperate in issuing the necessary directives to the operators of certain Online Platform Accounts to ensure that all online payments intended for AOI-DE made by consumers via those platforms are sent to the Company's Authorized Company Account.

- Fully cooperate in changing the payment directives on the Company Website to ensure that all online payments by consumers via that website are sent to the Company's Authorized Company Account.

- Restore to the Company's CFO full and unfettered access to the Company's books and records, including, but not limited to, the Company's QUICKBOOKS® accounting system.

- Produce to the Company's CFO all information necessary to ascertain any and all currently pending, but not yet delivered, orders for products placed by consumers, the payments made by those consumers and the accounts into which those payments have been deposited.

- Provide written assurances that they have not negotiated with or engaged any other person or entity to manufacture or supply products to AOI-DE in breach of Cocam exclusive supply rights.

- Cease the Company's acceptance of any more online orders for products from consumers, unless and until they fully comply with the items listed above.

- Cease any and all further attempts to amend the complaint in or otherwise pursue the California lawsuit in the name of AOI-DE.

B.  In addition to, but not in lieu of, the injunctive relief set forth in paragraph A above, an award of monetary damages in an amount to be proven at trial as sufficient to compensate the Company and Plaintiff Cocam for any and all economic injuries they have sustained as result of the Defendants' misconduct, including, but not limited to, lost revenues, profits, distributions and business opportunities.

C.  With respect to Counts IV, V and VI, an award of punitive damages in an amount sufficient to punish and deter the Defendants for their tortious and malicious conduct.

D.  Any and all other and further relief as just and its cause require.

WHITEFORD TAYLOR & PRESTON LLC

*/s/ Chad J. Toms*
Chad J. Toms, Esq. (#4155)
Kaan Ekiner, Esq. (#5607)
The Renaissance Centre
405 N. King Street, Suite 500
Wilmington, DE 19801
Telephone:  (302) 357-3253
Facsimile:  (302) 357-3273
ctoms@wtplaw.com
kekiner@wtplaw.com

*Attorneys for Plaintiff*

Dated: July 11, 2020

115495\000001\4832-0782-9954.v6